82 F.3d 423
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNIGARD SECURITY INSURANCE COMPANY, Plaintiff-Appellant,
v.
CIGNA REINSURANCE COMPANY, a foreign corporation, successor
to Insurance Company of North America, Defendant-Appellee.
 No. 94-35739.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 12, 1995.
Decided April 8, 1996.
 
 Before: WRIGHT, ALARCON, and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Unigard Security Insurance Company ("Unigard") appeals the district court's order denying its motion to vacate a portion of an arbitration award entered in proceedings between Unigard and CIGNA Reinsurance Company ("CIGNA"). The district court had jurisdiction to review the decision of the arbitration board pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.
 
 
 3
 We will not repeat the facts here because the parties are familiar with them. Unigard argues that the district court should have vacated a portion of the arbitration award pursuant to 9 U.S.C. § 10(a)(4) because the arbitration board exceeded its authority by imposing an award that does not draw its essence from the parties' contract. The district court may vacate an arbitration award if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). According to Unigard, the arbitration board exceeded its authority by failing to interpret the "loss occurrence" term in the arbitration award as it was required to do and by imposing an "extra-contractual" remedy through imposition of an equitable 50/50 settlement.
 
 
 4
 We agree, however, with CIGNA that the Board acted within its authority when it rendered its award. Although the Board was asked to resolve the disputed meanings of the terms "loss occurrence" and "Original Insured," we have been presented with no formal submission that confined the Board to a particular manner of resolving the disputed issues, or that required a formal definition of each term. The Board did not ignore any contractual provision of the Treaty. Under the Treaty, the Board was not confined to formal definition of terms disputed by the parties. The arbitration clause of the Treaty does not require the arbitrators to make findings of fact or conclusions of law. Cf. Western Employers Ins. v. Jeffries & Co., 958 F.2d 258, 259 (9th Cir.1992) (arbitration agreement required arbitrators to accompany any award with statement of findings of fact and conclusions of law). Nor does the clause limit the remedies that may be imposed. Cf. Coast Trading Co. v. Pacific Molasses Co., 681 F.2d 1195, 1198 (9th Cir.1982) (arbitrators imposed remedy not allowable under agreement).
 
 
 5
 There was evidence before the Board from which it could have concluded that some, but not all, of the asbestos losses could properly be cumulated into one "loss occurrence." Nothing prevented the Board from arriving at a rough estimate in determining how the contractual term applied to the dispute before it, or from taking equitable considerations into account in interpreting the disputed term. The Treaty provides that the Board "shall make its decision with regard to the custom and usage of the insurance and reinsurance business." Evidence presented in this case supports the conclusion that customs in the reinsurance business permit arbitrators to impose an equitable resolution. Therefore, it was permissible under the Treaty for the Board to have decided the loss occurrence issue as it did.
 
 
 6
 In arguing that the Board exceeded its authority by imposing an extra-contractual remedy, Unigard relies in part on Executive Life Ins. v. Alexander Ins., Ltd., 999 F.2d 318, 320 (8th Cir.1993). In Executive Life, however, the district court vacated the arbitration award because the arbitrators imposed a remedy that was contrary to the customs and practices of the insurance industry. Id. Further, the Eighth Circuit reversed the district court because the arbitration contract "broadly empowered the arbitrators to use equity and customary industry practices to decide all questions and issues." Id. The court reasoned that even if the remedy was contrary to the customs and practices of the insurance industry, the arbitration agreement permitted the arbitrators to appeal to equitable principles.
 
 
 7
 In the case at bar, like Executive Life, the Treaty empowered the Board to "make its decision with regard to the custom and usage of the insurance and reinsurance business." Unlike Executive Life, there is evidence in this case that the Board's decision comported with the custom and practice of the reinsurance industry. The award " 'draw[s] its essence' from the contract" because the contractual dispute was subject to resolution on other than an all-or-nothing basis, and the Treaty implicitly authorizes the Board to impose an equitable remedy. See Michigan Mut. Ins. Co. v. Unigard Sec. Ins. Co., 44 F.3d 826, 830-31 (9th Cir.1995) (citations omitted). Therefore, we reject Unigard's argument that the Board imposed an "extra-contractual" remedy that exceeded the Board's authority under the arbitration agreement.
 
 
 8
 We conclude that the arbitration award was proper under the terms of this contract because it resolved the meaning of a disputed contractual term in a manner that comported with the custom and usage of the reinsurance industry.
 
 
 9
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3